UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


CLOYD HALL,                          )
                                     )
                  Plaintiff,         )
                                     )
        v.                           )          No.  4:12CV1877 ACL
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of Social Security,[1]  )
                                     )
                  Defendant.         )


## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the Commissioner's final decision denying Cloyd Hall's application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§

401, *et seq.*, and his application for supplemental security income under Title XVI

of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending before the

undersigned United States Magistrate Judge, with consent of the parties, pursuant

to 28 U.S.C. § 636(c).  Because the final decision is not supported by substantial

evidence on the record as a whole, the decision of the Commissioner is reversed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
As such, she is substituted for Michael J. Astrue as the defendant in this cause of action.  Fed. R.
Civ. P. 25(d).

# I. Procedural History

Plaintiff Cloyd Hall filed his application for disability insurance benefits (DIB) and his application for supplemental security income (SSI) on August 13, 2009, alleging that he became disabled on December 31, 2004, because of ventral hernia, having one kidney, and lower extremity hernia. (Tr. 117-23, 124-29.)[2] On October 19, 2009, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 39, 40, 41-44.) Upon plaintiff's request, a hearing was held before an administrative law judge (ALJ) on April 12, 2011, at which plaintiff testified. (Tr. 26-38.) On July 25, 2011, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform his past relevant work as a maintenance carpenter and sheet metal worker. (Tr. 10-21.) On August 24, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, plaintiff argues that the ALJ's determination as to plaintiff's residual functional capacity (RFC) is not supported by any evidence of record. Plaintiff

---

[2] Plaintiff subsequently amended his onset date to November 1, 2009. (Tr. 154.)

also claims that the ALJ erred in her RFC determination by failing to include all limitations plaintiff experiences as a result of his severe and non-severe impairments; by failing to engage in a function-by-function analysis of plaintiff's abilities; and by failing to engage in a narrative discussion demonstrating evidentiary support for the RFC determination. Plaintiff also claims that the ALJ erred in relying on evidence obtained from a vocational expert to find plaintiff not disabled inasmuch as the expert was provided an incomplete hypothetical question upon which to base her opinion. Plaintiff also contends that the ALJ erred by failing to consider evidence that the Department of Veterans Affairs found plaintiff to be disabled. Finally, plaintiff argues that the ALJ erred in her adverse credibility determination. Plaintiff requests that the final decision be reversed and that he be awarded benefits, or that the matter be remanded for further consideration.

## II.  Testimonial Evidence Before the ALJ

A.    Plaintiff's Testimony – Administrative Hearing

At the hearing on April 12, 2011, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was sixty years of age. Plaintiff went to college for four years and obtained additional vocational/technical training in aircraft maintenance and manufacturing, as a carpenter/plumber, and as a sheet metal specialist. Plaintiff had also served in the military. Plaintiff currently lived

in a home with his brother.  (Tr. 29-30, 35.)

Plaintiff testified that he last worked in the summer of 2009 as a subcontractor for Winnaker Construction Company and participated in a recovery center work program in January 2010.   (Tr. 30- 32.)

Plaintiff testified that he has a snapped tendon in his right biceps that affects his ability to use his right hand.  Plaintiff is right-handed.  Plaintiff testified that he also has multiple fractures in his hand, requiring the use of an external traction device to reconnect the bones.  (Tr. 35-36.)

Plaintiff testified that he also has lower extremity hernias that contract and retract when he walks.  Plaintiff testified that walking, going up steps, bending forward, and any activity that works his thighs aggravate the condition.  (Tr. 35.)

Plaintiff testified as to drug use and that he last used cocaine in February 2010.  (Tr. 32.)  Plaintiff testified that he last smoked marijuana in January 2011.  (Tr. 37.)  Plaintiff testified that he never participated in a rehabilitation or detoxification program for either alcohol or drug use.  (Tr. 31-32.)

As to his exertional abilities, plaintiff testified that he can sit for a couple of hours at one time, stand for thirty to forty-five minutes at one time, and lift thirty to forty pounds.  (Tr. 36.)  Plaintiff testified that he is able to walk for two or three blocks, but stops walking after thirty minutes to take a break because of pressure in his hips.  (Tr. 34.)

As to his daily activities, plaintiff testified that he wakes up between 6:00 and 6:30 a.m., cares for his personal hygiene, and prepares breakfast. Plaintiff testified that he then reads and watches television for about an hour or two. Plaintiff testified that he naps around lunchtime for an hour and a half. Plaintiff testified that he then takes a walk. Plaintiff testified that he makes his bed and washes his dishes, but does no other housework, such as vacuuming, sweeping, or mopping. Plaintiff testified that his brother wants to perform these other chores so that plaintiff does not have to move too much and aggravate his health conditions. Plaintiff testified that he sleeps in the basement so he does not have to walk up and down stairs. Plaintiff testified that he has limited use of his right hand but can feed himself, button his clothes, and zip zippers. (Tr. 33-36.)

B.     Vocational Expert Interrogatories

On April 20, 2011, Delores Gonzalez, a vocational expert, answered written interrogatories put to her by the ALJ.

Ms. Gonzalez was asked to consider an individual fifty-four years of age[3] with sixteen years of education and to further consider the individual to have training in aircraft maintenance, refrigeration, air conditioning, plumbing,

---

[3] Plaintiff's birthdate is June 28, 1950. (*See, e.g.,* Tr. 124.) In these interrogatories, the ALJ asked the vocational expert to assume an individual of plaintiff's age as of the date of the alleged onset of disability, which, prior to plaintiff amending his alleged onset date, was December 31, 2004, thereby making plaintiff fifty-four years of age. With the amendment of plaintiff's alleged onset date to November 1, 2009, however, plaintiff's age on such date was fifty-nine years.

carpentry/rehab, sheet metal, and military aircraft maintenance. Ms. Gonzalez was asked to further assume that the individual could stand/walk six hours out of an eight-hour workday, sit two hours out of an eight-hour workday, occasionally lift fifty pounds, and frequently lift twenty-five pounds. Ms. Gonzalez responded that such a person could perform plaintiff's past work as a maintenance carpenter and sheet metal worker as defined in the *Dictionary of Occupational Titles*. (Tr. 209.)

The ALJ then posed to Ms. Gonzalez interrogatories submitted by plaintiff's counsel. Ms. Gonzalez was first asked to consider an individual of plaintiff's age, education, and work experience, and to assume that the individual could stand/walk six hours out of an eight-hour workday, sit two hours out of an eight-hour workday, occasionally lift and/or carry up to twenty pounds, and frequently lift and/or carry up to ten pounds. Ms. Gonzalez responded that such a person could not perform plaintiff's past relevant work, but could perform other work in the national economy such as "sticker," of which 5,990 such jobs exist in the State of Missouri and 239,550 nationally; "stuffer," of which 10,550 such jobs exist in the State of Missouri and 338,920 nationally; and "call out operator," of which 610 such jobs exist in the State of Missouri and 57,220 nationally. Ms. Gonzalez was then asked to consider the same individual, but that the individual would miss work three or more times a month because of his symptoms and would be late to work or leave early three or more times a month because of his symptoms. Ms.

Gonzalez responded that such a person could not perform plaintiff's past relevant work or any other work in the national economy. Finally, Ms. Gonzalez was asked to consider the same individual but that the individual would require the ability to nap or lie down for an extended period during an eight-hour workday in addition to regularly scheduled breaks. Ms. Gonzalez responded that such a person could not perform plaintiff's past relevant work or any other work in the national economy. (Tr. 228-29.)

### III. Medical Evidence Before the ALJ

Plaintiff went to the emergency room at John Cochran Veterans Affairs Medical Center (VAMC) on June 5, 2009, requesting detoxification for crack cocaine use. Plaintiff reported using crack cocaine nearly every day for five years, with his last use being two days prior. Plaintiff was noted to be fifty-eight years of age. Plaintiff was told that there were no beds available and no expected discharges. Plaintiff reported that he would check back the following week. Plaintiff returned on June 8 and reported that he last used crack cocaine and "weed" six days prior. Plaintiff exhibited no withdrawal symptoms or symptoms of intoxication. Plaintiff was given contact information for the detoxification program and was discharged to home. (Tr. 318-20.)

On June 15, 2009, plaintiff visited the VAMC clinic and expressed his desire to quit his cocaine and marijuana use. Plaintiff was noted to be homeless and to be

staying with friends or on the street. Physical examination showed plaintiff to have a ventral hernia, but it was noted to be non-tender and reducible. Plaintiff was also noted to have pain in the right shoulder, which plaintiff reported was due to moving dry wall. Plaintiff reported having increased pain with movement and sometimes waking with pain. No change was noted in strength. Mild tenderness was noted to palpation at the anteromedial aspect of the shoulder. Physical examination was otherwise normal. Plaintiff was diagnosed with substance abuse and right shoulder rotator cuff strain. Plaintiff was instructed to take Tylenol, apply ice, and rest the shoulder. Plaintiff was advised that he would be called when an opening was available in the substance abuse treatment program. (Tr. 313-18.)

Plaintiff visited the walk-in clinic at VAMC on October 15, 2009, with complaints of having right shoulder pain during the past three months. Plaintiff reported his pain to be at a level eight on a scale of one to ten. Plaintiff reported that his upper arm seemed deformed. Plaintiff reported that he was able to perform his normal activities of daily living, but that he had occasional pain with certain movements and increased pain when sleeping on his right side. It was noted that plaintiff had not yet entered substance abuse treatment, and plaintiff reported having last used crack cocaine one month prior. Plaintiff reported being homeless. Physical examination showed ventral hernia and right inguinal hernia, which was

noted to be non-tender and reducible. Examination of the right shoulder showed deformity of the medial portion of the short head of the biceps on flexion. No point tenderness or decreased range of motion was noted. Plaintiff exhibited no pain on passive or active rotation. Range of motion about the elbow was intact. Arm flexion strength was noted to be 5/5 on the left and 4+/5 on the right. Biceps tendon rupture was suspected. Plaintiff was given Tylenol and Flexeril for pain relief. An MRI and orthopedic consult were ordered. (Tr. 431-35.) An x-ray of the right shoulder taken October 26, 2009, showed a small spur in the right acromion process. (Tr. 332-33.)

Plaintiff visited Joan Bystrom, a licensed clinical social worker, at the VAMC on October 23, 2009, and requested assistance. It was noted that plaintiff was homeless. Ms. Bystrom provided plaintiff information relating to employment and housing services and the criteria required to receive such services. (Tr. 429-31.) Plaintiff returned to Ms. Bystrom on November 13, 2009, and reported on his efforts to obtain assistance. Plaintiff also reported that he recently applied for his veteran's pension. Screening was positive for moderate depression. Laboratory testing conducted that same date yielded positive results for the presence of cocaine. (Tr. 423-28.)

Plaintiff returned to the VAMC on December 23, 2009, with complaints of continued pain in the right shoulder and of pain in his left hip. Plaintiff reported

his hip pain worsened with walking, but that squatting helped relieve the pain. Plaintiff reported being out of pain medication and that his pain was currently at a level eight or nine. Plaintiff requested that his upcoming MRI be cancelled, because of shrapnel surrounding his heart and his concern that the MRI would cause further damage. Physical examination showed an apparent muscle defect of the right shoulder, but no limit in range of motion. Pain was elicited on active and passive motion of the left hip. Flexeril was provided, and plaintiff was given instruction regarding use of over the counter medications. Surgical intervention for the tendon rupture was not indicated. (Tr. 373, 419-22.)

Plaintiff contacted Ms. Bystrom on January 11, 2010, and reported that he had applied for his veteran's pension and that he also applied for the work program at the Recovery Center. (Tr. 418.)

Plaintiff visited Ms. Bystrom on February 25, 2010, and requested admittance into a drug abuse treatment program. Plaintiff reported not having used drugs for three weeks and that he wanted to stop the addiction. Plaintiff reported continued homelessness. Ms. Bystrom gave plaintiff information regarding available resources. (Tr. 417-18.)

Plaintiff was admitted to VAMC on March 9, 2010, with complaints of shortness of breath and chest pain after having moved a wheelbarrow. Plaintiff's history of drug use was noted, and plaintiff reported having last used cocaine one

month prior.  Angiography results showed mild plaquing in the left main coronary artery, irregular plaque in the proximal left anterior descending artery, minimal plaquing in the left circumflex artery, tubular narrowing in the proximal segment of the right coronary artery, and ulcerated stenosis in the distal segment with associated thrombus and TIMI 2 flow.  Plaintiff underwent angioplasty and stent placement.  A subsequent echocardiogram showed dilated aortic root, left ventricular hypertrophy, normal wall motion, normal left ventricular chamber size, grade 2 left ventricular diastolic function, dilated left atrium, mild to moderate aortic regurgitation and mild mitral regurgitation, no pulmonary hypertension, and possible PFO[4] with mild left to right shunt.  Plaintiff was discharged on March 11, 2010, in stable condition with diagnoses of myocardial infarction and coronary artery disease.  Plaintiff was given Metoprolol, aspirin, Plavix, and Statin upon discharge.  (Tr. 348-49, 378-417.)

During his admission at VAMC, plaintiff underwent a social work assessment during which he reported a history of working in construction, but that most of his work was seasonal and "under the table."  Plaintiff appeared upset that he may not be able to work.  Plaintiff reported that he currently lived with his

---

[4] Patent foramen ovale (PFO) is a hole between the left and right atria (upper chambers) of the heart that fails to close naturally soon after a baby is born. *Medline Plus* (last updated Dec. 1, 2011)< http://www.nlm.nih.gov/medlineplus/ency/article/001113.htm>.

brother and that, prior to this present admission, he was independent with all activities of daily living. Plaintiff reported using marijuana, but it was noted that plaintiff also had a history of crack cocaine use. Plaintiff stated that he received an honorable discharge from the Air Force, but that the VA Regional Office erroneously had him listed as dishonorably discharged, which resulted in him being denied his veteran's pension. Plaintiff was encouraged to visit the Regional Office to correct the records. (Tr. 394-97.) Plaintiff also underwent a psychiatric consult during which he reported that he recently obtained a job and was concerned about becoming jobless again. Plaintiff reportedly felt that his cocaine use was not very significant and stated that he could stop such use without a treatment program. Plaintiff stated that he planned to secure a job as soon as possible. (Tr. 368-69.)

Plaintiff returned to VAMC on May 11, 2010, and reported continued pain from his ruptured biceps tendon and requested repair of his inguinal hernia. Plaintiff reported having no chest pain, shortness of breath, edema, or palpitations and that he was taking his medications as ordered. The doctor who saw plaintiff noted that plaintiff was doing well post myocardial infarction. Plaintiff was instructed to continue with his medications. (Tr. 376-78.)

Plaintiff visited VAMC on September 21, 2010, for medication refill. Plaintiff denied any chest pain, shortness of breath, dyspnea with exertion, or PND

(paroxysmal nocturnal dyspnea – breathing difficulty while lying down).  Plaintiff also denied any lower extremity edema.  Plaintiff's Metoprolol was refilled.  (Tr. 469-73.)

During an independent medical examination conducted at the VAMC on October 8, 2010, for purposes of determining veteran's disability, plaintiff reported that he injured his right hand in 1970 and that the injury healed poorly.  Plaintiff reported that he experienced pain in his fourth finger on the right hand and that such pain ranged from two/three to seven/eight.  Plaintiff reported occasionally taking over the counter medication.  Plaintiff reported having no neurosensory deficits associated with the injury and that the injury did not incapacitate him or affect his occupational status.  Physical examination showed a bony deformity over the proximal to mid fourth metacarpal area with mild tenderness.  Grip strength was noted to be 4/5 in the right hand and 5/5 in the left.  (Tr. 465-67.)  X-rays taken of the right hand that same date showed old healed fractures of the fourth and fifth metacarpal bones with fracture deformity of the fourth metacarpal bone.  No evidence of acute bone or joint abnormality was noted.  (Tr. 444-45.)  Plaintiff was diagnosed with arthralgia hypertrophic bony deformity status post right fourth metacarpal fracture with suspected degenerative joint complex.  (Tr. 469.)

On November 2, 2010, the Department of Veterans Affairs determined to award plaintiff a disability pension, effective October 28, 2009, finding that

plaintiff's coronary artery disease, inguinal hernia, nephrectomy, ruptured biceps tendon, and adjustment disorder resulted in a combined disabilities evaluation totaling seventy percent. (Tr. 190-200.)

Plaintiff visited VAMC on November 5, 2010, with continued complaints of shoulder pain. Plaintiff requested an evaluation for surgical intervention. Plaintiff also reported that his inguinal hernia had increased in size, limiting his ability to work. Physical examination showed a ventral hernia that was painless and reducible, an inguinal hernia that was reducible, and a defect of the biceps upon palpation, but with no tenderness. An ultrasound was ordered for evaluation of the ruptured biceps tendon, and plaintiff was referred for surgical consult regarding the inguinal hernia. (Tr. 460-63.)

On February 4, 2011, plaintiff underwent a surgical consult at VAMC for inguinal hernia repair. Plaintiff reported no change in the size or symptoms of the hernia since 1974. Plaintiff reported greater pressure and more discomfort in the area since rupturing his biceps tendon in 2009, because he had to change his work habits. Plaintiff reported experiencing occasional pain with pressure or exertion, with such pain measured to be at a level five. The hernia was noted to be firm to palpation while standing and visible while lying down, but easily reducible. Plaintiff was also noted to have two ventral hernias, reported by plaintiff to be significantly less bothersome than the inguinal hernia. It was noted that surgery

would be scheduled for late March or early April, which would be more than one year beyond plaintiff's stent placement. (Tr. 454-60.)

## IV. The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. The ALJ found that plaintiff had not engaged in substantial gainful activity since November 1, 2009, the amended alleged onset date of disability. The ALJ found plaintiff's history of inguinal and ventral hernias, ruptured biceps tendon, and coronary artery disease-status post balloon angioplasty to be severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ determined that plaintiff had the RFC to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about two hours in an eight-hour workday. The ALJ found the vocational expert's responses to interrogatories to support a finding that plaintiff was able to perform his past relevant work as a maintenance carpenter and sheet metal worker as such work is typically performed in the national economy.[5] The ALJ thus found plaintiff not to be under a disability since

_____

[5] The ALJ states in her decision that plaintiff's counsel "did not present additional interrogatories" to the vocational expert. (Tr. 20.) As detailed *supra* at pp. 6-7, however,

November 1, 2009, and denied plaintiff's claims for benefits. (Tr.13-21.)

## V. Discussion

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding

counsel indeed submitted interrogatories that were directed to the expert, and the expert provided opinions on the hypothetical questions set out therein.

whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent

conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at 1217, *citing Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

As noted, *supra*, at pp. 2-3, plaintiff raises numerous claims that the ALJ's decision is not supported by substantial evidence, specifically addressing the ALJ's credibility determination, the manner and method by which the ALJ assessed plaintiff's RFC, and the ALJ's failure to consider the VA's finding of disability. Notably consistent throughout all of plaintiff's arguments is plaintiff's observation that the ALJ's decision contains inaccuracies, misstatements, and omissions of significant record evidence. While the Commissioner in her brief appears to dismiss these flaws as mere "deficiencies in opinion-writing technique," the repeated nature of the ALJ's misapprehensions of the record renders it difficult, at best, for this Court to determine the extent to which the ALJ relied on such misapprehensions in finding plaintiff not to be disabled. Because it cannot be said that the ALJ's determination is based upon a proper review of the evidence of

record, the matter must be remanded. Against this backdrop, the undersigned will proceed to address plaintiff's claims.

A.    Consideration of VA Disability Determination

On November 1, 2010, the Department of Veterans Affairs entered a Rating Decision whereby it was determined that plaintiff was entitled to receive veterans disability benefits for his non-service-connected impairments of coronary artery disease, inguinal hernia, nephrectomy, ruptured biceps tendon, and adjustment disorder. In this Rating Decision, the VA detailed the medical evidence it reviewed and its reasoning underlying the decision. Plaintiff was awarded such benefits effective October 28, 2009, the date on which the VA received plaintiff's application for benefits. (Tr. 190-94, 195-200.) Although this Rating Decision was before the ALJ at the time of her adverse decision here, the ALJ did not acknowledge this decision nor any of the findings made therein.

It is well-established that disability decisions made by other government agencies (such as the VA) are not binding on the Social Security Administration. 20 C.F.R. §§ 404.1504, 416.904; *Pelkey v. Barnhart,* 433 F.3d 575, 579 (8th Cir. 2006). Nevertheless, a government agency's decision that a claimant is disabled is evidence that "cannot be ignored and must be considered" by the Commissioner. 20 C.F.R. §§ 404.1512(b)(5), 416.912(b)(5) ("evidence" includes governmental agency decision); Social Security Ruling (SSR) 06–03p, 2006 WL 2329939, at *6

(Soc. Sec. Admin. Aug. 9, 2006) (such evidence cannot be ignored and must be considered). Indeed, the ALJ "should explain the consideration given to these decisions in the notice of decision[.]" SSR 06–03p, 2006 WL 2329939, at *7. While not binding on an ALJ, findings of disability by other federal agencies "are entitled to some weight and must be considered in the ALJ's decision." *Morrison v. Apfel,* 146 F.3d 625, 628 (8th Cir.1998). If an ALJ is going to reject such findings, "reasons should [be] given, to enable a reasoned review by the courts." *Id.*

Here, as noted above and as acknowledged by the Commissioner in her brief, the ALJ wholly failed to address the VA's Rating Decision. The Commissioner argues, however, that this failure should not result in a remand inasmuch as a review of the substance of the Rating Decision shows it not to be entirely favorable to plaintiff. (*See* Deft.'s Brief, Doc. #18 at p. 9.) The Commissioner cannot cure an ALJ's failure to follow agency regulations by arguing the substance of the record – rather than the ALJ's opinion itself – and performing the analysis the ALJ should have conducted in the first instance. It would be improper for this Court to rely on such post hoc rationalization to affirm an otherwise defective administrative decision. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action[.]").

The ALJ's failure to acknowledge and weigh the VA Rating Decision here is especially significant given the ALJ's purported consideration of other opinion evidence of record. As noted by plaintiff, the ALJ stated in her decision that, in determining plaintiff's RFC, she "considered the administrative findings of fact made by the State agency medical physicians and other consultants. These opinions are weighed as non-examining expert sources." (Tr. 20.) However, there are no opinions in the record rendered by any State agency medical physicians or consultants. Again, the Commissioner acknowledges this error (Doc. #18 at p. 8) but argues that such misstatement gives rise only to an arguable deficiency in opinion-writing technique and amounts to nothing more than harmless error inasmuch as substantial evidence on the record as a whole supports the ALJ's RFC determination. "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart,* 425 F.3d 1127, 1130 (8th Cir. 2005) (internal citations and quotation marks omitted) (alteration in *Draper*).

The ALJ's misstatement here that she considered the opinion evidence of State agency physicians and consultants where none existed in the record, coupled with her failure to consider and weigh the VA's opinion of disability that was a

part of the record, creates uncertainty and casts doubt upon the ALJ's rationale for denying plaintiff's claims. *See Willcockson v. Astrue*, 540 F.3d 878, 879-80 (8th Cir. 2008). Because it cannot be determined from the ALJ's decision whether she properly reviewed the evidence of record, the matter must be remanded. *Id.*

B.    Credibility Determination

Similar inaccuracies and misstatements plague the ALJ's credibility determination. In her written decision, the ALJ found plaintiff's subjective complaints not to be credible. In support of this determination, the ALJ found plaintiff to have reported inaccurately that he received a dishonorable discharge from the military; that he minimized his drug use to his treating sources; that he had the physical capacity to engage in strenuous activities; and had a practice of not reporting his earnings to the government. (Tr. 19-20.) In her brief, the Commissioner acknowledges that the ALJ "may have misunderstood [plaintiff's] drug use and military discharge status in evaluating the record," but argues that the ALJ nevertheless engaged in a credibility determination that was supported by substantial evidence. (Doc. #18 at p. 6.) The undersigned disagrees.

Where alleged inconsistencies upon which an ALJ relies to discredit a claimant's subjective complaints are not supported by and indeed are contrary to the record, the ALJ's ultimate conclusion that the claimant's symptoms are less severe than he claims is undermined. *Baumgarten v. Chater*, 75 F.3d 366, 368-69

(8th Cir. 1996).  In addition, although the Commissioner argues that it was proper

for the ALJ to consider plaintiff's activities of moving canned goods in July 2006,[6]

cleaning a garage in March 2009,[7] moving drywall in June 2009, and pushing a

wheelbarrow in March 2010 in making her credibility determination, the

undersigned notes that the ALJ stated in her decision that plaintiff's ability to

perform these activities was "at odds" with a finding of disability inasmuch as

plaintiff performed such activities "during his claimed disability[.]"  (Tr. 20.)

Plaintiff's alleged onset date of disability was November 1, 2009.  To the extent

pushing a wheelbarrow occurred during this period of claimed disability, the

undersigned notes that plaintiff suffered a myocardial infarction upon engaging in

such activity and underwent immediate angioplasty and stent placement.  (Tr. 348-

49)  To the extent the activities predating November 2009 may indeed be relevant,

the undersigned questions whether these isolated activities spanning three years are

sufficient to discredit the entirety of plaintiff's complaints.  *See Baumgarten*, 75

F.3d at 369 (isolated attempts at strenuous activity shed more light on claimant's

perseverance than on credibility of complaints).

Because of the several inconsistencies in the ALJ's reading of the record, it

[6]  Plaintiff went to the emergency room on July 24, 2006, with a laceration to his scalp suffered
in relation to his "moving canned goods."  (Tr. 262.)

[7]  Plaintiff went to the emergency room on March 14, 2009, with a laceration to his right hand
suffered while cleaning a garage.  (Tr. 272.)

cannot be said that the ALJ demonstrated in her written decision that she properly considered all of the evidence relevant to plaintiff's complaints or that the evidence she considered so contradicted plaintiff's subjective complaints that his testimony could be discounted as not credible. *Masterson v. Barnhart*, 363 F.3d at 731,738-39 (8th Cir. 2004); *Baumgarten*, 75 F.3d at 370. The matter must therefore be remanded for reconsideration of plaintiff's credibility, with such reconsideration to include an appropriate analysis as required by and for the reasons discussed in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984).[8]

C.    RFC Determination

In support of her claim that the ALJ's RFC determination is flawed, plaintiff raises numerous claims challenging the manner and method by which the ALJ reached her conclusions regarding plaintiff's RFC. In addition, plaintiff contends that the ALJ erred by relying on the vocational expert's opinion to find plaintiff able to perform his past relevant work inasmuch as the hypothetical upon which the expert gave her opinion was based on this flawed RFC.

A claimant's RFC is the most a claimant can do despite his physical or mental limitations. *Masterson*, 363 F.3d at 737. The ALJ bears the primary

---

[8]  In determining the credibility of a claimant's subjective complaints, *Polaski* requires the ALJ to consider:  (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  739 F.2d at 1322.

responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); 20 C.F.R. §§ 404.1545(a), 416.945(a). Where, as here, an ALJ errs in her review of the relevant evidence of record and in her determination to discredit a claimant's subjective complaints, the resulting RFC is called into question inasmuch as it does not include all of the claimant's limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001). Likewise, vocational expert testimony based upon a hypothetical that does not account for all of a claimant's limitations cannot constitute substantial evidence to support an ALJ's decision. *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010); *cf. Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) (ALJ permitted to rely on vocational expert testimony at Step 4 of sequential analysis in determining claimant's ability to perform past relevant work), *citing Haynes v. Shalala*, 26 F.3d 812 (8th Cir. 1994).

Upon remand, the Commissioner will be given the opportunity to review all relevant evidence under the appropriate standards in determining plaintiff's RFC. Inasmuch as the determination of a claimant's RFC is a medical question and some medical evidence must support the determination, *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010), the Commissioner will likewise be given the opportunity to

identify and clarify the medical evidence of record that supports her conclusions as to plaintiff's RFC.

## VI. Conclusion

Because substantial evidence on the record as a whole does not support the ALJ's decision, the matter is remanded to the Commissioner for further consideration of plaintiff's claims in light of all the evidence of record, including an evaluation of the Department of Veterans Affairs Rating Decision under the appropriate standards, and development of any additional facts as needed. The Commissioner shall reevaluate the credibility of plaintiff's complaints in accordance with *Polaski* and base such evaluation upon a proper review of the evidence of record. In addition, the Commissioner shall assess plaintiff's RFC consistent with the medical and other evidence of record and shall identify the medical evidence that supports such assessment. Inasmuch as a claimant's RFC is a medical question and some medical evidence must support the RFC determination, the Commissioner is encouraged upon remand to obtain medical evidence that addresses the plaintiff's ability to function in the workplace, which may include contacting plaintiff's treating physician(s) to clarify plaintiff's limitations and restrictions in order to ascertain what level of work, if any, plaintiff is able to perform. *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006). Finally, if necessary, the

Commissioner shall obtain vocational expert testimony to determine whether plaintiff is capable of performing past relevant work or other work as it exists in the national economy, and such testimony shall be based upon a proper hypothetical which accounts for all of plaintiff's limitations and accurately depicts plaintiff's vocational factors, including his age.

Because the current record does not conclusively demonstrate that plaintiff is entitled to benefits, it would be inappropriate for the Court to award plaintiff such benefits at this time.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of June, 2014.